## BERNICE LUCK V. THE STATE.

No. 16178. Delivered January 10, 1934.
Reported in 67 S. W. (2d) 302.

The opinion states the case.

*W. E. Myres,* of Fort Worth, *John K. Russell,* and *A. C. Chrisman,* both of Cleburne, and *Word & Word,* of Meridian, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is burglary; the punishment, confinement in the penitentiary for two years.

J. T. Cravens testified that his place of business was burglarized on the night of December 3, 1932. He did not learn of the burglary until the following morning. Upon investigation, he found that merchandise of the approximate value of $357 had been taken from the building. Among the goods stolen were a dozen suits of men's underwear, 196 yards of print, 2 pairs of blankets, a dozen "sleep nets," a dozen neckties, safety pins and men's garters. These articles were in the boxes in the same condition in which they had been received by Mr. Craven, his testimony being to the effect that they had not been unpacked. Some of the other goods taken consisted of 300 yards of silks, a dozen men's dress shirts, 10 dozen Silkine threads, 100 yards of dress ginghams, 10 ladies' dresses, 6 men's hats, 5 pairs of dress shoes and slippers, 15 pairs of ladies' pumps and slippers, twenty dollars worth of table spreads and lace and 3 dozen men's silk socks.

On March 7, 1933, which was aprpoximately 3 months after the burglary, the sheriff of Bosque County secured a search warrant and went to the home of Howard Young for the purpose of searching for the stolen property. Approximately fourteen dollars worth of the stolen property was found in Young's home, and identified by Mr. Craven as being some of the merchandise taken from his store on the night of the burglary. It appears that Young's home was not far removed from the burglarized store.

Curtis Cox, an accomplice witness, testified for the state that he, Bull Newsom, Ray Newsom, and appellant burglarized Mr. Craven's store on the night of December 3, 1932, and carried the merchandise to the home of Howard Young. He said they arrived at Young's house about two o'clock in the morning. He testified that he thought Young helped them carry the goods in the house. Further, he said that the mer-

chandise was carried into the kitchen. According to the testimony of the witness, elicited by the state on direct-examination, after they had reached the kitchen, Bull Newsom said: "Well boys, I done this job and I am going to be the one that distributes this stuff." At this point we quote from the testimony of the witness: "I was standing in the door and I didn't ask for a bit of it at all, and he was sorting it out, and I believe he (Bull Newsom) and Ray Newsom took their part together, and he dished out Bernice Luck (appellant) some of it, and I believe he gave this Howard Young some of it. Bull Newsom also dished me out a pile of stuff." Further, the witness testified that they left the merchandise in the home of Howard Young but returned in two or three days and carried part of it away.

Testifying for the state, Howard Young admitted that the merchandise found in his house by the officers at the time they made the search on March 7th was brought there by appellant and his companions. He testified that the parties came to his home after midnight and asked him to let them leave the goods in his possession. We quote from his testimony: "They just brought it in there and left it. However, it was divided there that night in my kitchen. Bull Newsom divided it. Bernice Luck, the defendant, was in there part of the time while it was being divided. The stuff was piled out in different piles when it was being divided. I don't know how many different piles of the stuff there was when it was divided up, but several, three or four anyway. As to whether or not Bull Newsom was making a pile of the stuff for each fellow, I don't know. I saw him dividing it there into the piles. Anyway, it was divided up into three or four piles. As to what this stuff they brought there that night consisted of, it was just goods, bolt goods, and socks and different articles of dry goods. There were three or four pairs of shoes there. It was just a general mixture of dry goods. * * * These parties that night when the stuff was brought to my house did not make a pile of this stuff for me when they were dividing it, but they gave me some of it. They did not give me as much as they were putting in the piles for the others.

It appears that appellant and his companions were young men, and that they were well known to Howard Young. Young testified that he knew that the parties were not engaged in the dry goods business. He declared that he had no previous arrangement with them to receive stolen property. He said that, while it was out of the ordinary for men to bring goods in the night time and leave them at his house, he did not think that the property had been stolen. He said: "My mind never re-

flected for a minute but what the goods was straight and all right, although they were brought there at three o'clock in the morning. I never did notify the officers about the goods being there. It was nothing to me. I kept it a secret." He testified, further, that the parties came to the house in two or three days after the property had been left with him and took part of it away. He said he gave his wife a pair of the shoes.

Mrs. Young testified that she heard the parties come to the house on the occasion in question but did not see them and did not know who they were. She said that later she saw the merchandise in the house, and that her husband gave her a pair of the shoes. She said, further, that a day or two later appellant and the other parties came to the house and carried some of the goods away. She declared that she and her husband discussed the matter of the goods having been brought to the house and that they entertained a suspicion they had been stolen, but had no proof of it. She said, however, that she did not know that the property had been stolen until the officers discovered it in her house.

Appellant offered no witnesses.

Appellant timely and properly objected to the charge of the court for its failure to instruct the jury that the witness Howard Young was an accomplice as a matter of law. The objection was overruled. However, the court submitted to the jury the question as to whether or not the witness was an accomplice. We think the witness was an accomplice as a matter of law. When applied to evidence, the term "accomplice" means a person who, as a principal, accomplice, or accessory, is connected with the crime by an unlawful act or omission upon his part, transpiring either before, at the time of, or after, the commission of the offense, and whether or not he was present and participated in the crime. Dooley v. State, 7 S. W. (2d) 97. It is the general rule that where one who has taken part in the commission of an offense endeavors by his own testimony to show his innocent intent his relation to the crime becomes a question of fact, and the jury must be called upon to determine whether or not he was an accomplice witness. It is true that the witness denied that he knew that the property he received had been stolen. However, the accomplice witness Curtis Cox testified, in response to questions by the district attorney on his direct examination, that when the goods were taken into the house by Young and the others they were divided after Bull Newsom had stated to them, in effect, that he had the right to distribute the goods inasmuch as he had "done the job." It was undisputed that at that time Young received part of the

stolen goods. The statement made by Bull Newsom, the fact that the stolen property was brought to the house after midnight, the further fact that it consisted of a large quantity of new merchandise, the concealment of the property until discovered under a search warrant three months after the burglary, together with all of the circumstances testified to by the witnesses for the state, lead inescapably to the conclusion that the witness was an accomplice as a matter of law. Under the circumstances, the declaration of the witness to the effect that he did not know the property was stolen is not deemed to be of sufficient cogency to support the finding that the intent of the witness was innocent.

We think the trial court properly submitted to the jury the question as to whether Mrs. Young was an accomplice.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.